IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33213-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEBRA RENEE MONROE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Debra Monroe appeals her sentence for second degree possession of stolen property. Finding no error, we affirm.

## FACTS

Ms. Monroe was convicted of three counts of second degree possession of stolen property. At sentencing, the State argued Ms. Monroe's offender score was 18. While Ms. Monroe's counsel did not agree with this calculation, counsel did state, "I am stipulating [Ms. Monroe's] a nine plus." 2 Verbatim Report of Proceedings (VRP) (Feb.

No. 33213-6-III
*State v. Monroe*

19, 2015) at 244. The trial court imposed a standard range sentence of 29 months based on an offender score of 18. The court then waived the $200 criminal filing fee before imposing a $500 victim assessment and a $100 DNA[1] collection fee in legal financial obligations (LFOs). Ms. Monroe appeals her sentence.

ANALYSIS

*Offender Score Calculation*

For the first time on appeal, Ms. Monroe contends numerous previous convictions from her criminal history had "washed out" and thus should not have been included in her offender score. A defendant can appeal a standard range sentence if the court failed to follow proper procedures, including offender score calculation procedures. *State v. Autrey*, 136 Wn. App. 460, 469, 150 P.3d 580 (2006). A sentencing court's offender score calculation is reviewed de novo. *State v. Wilson*, 113 Wn. App. 122, 136, 52 P.3d 545 (2002).

To establish a defendant's criminal history for sentencing purposes, the State must prove the existence of prior convictions by a preponderance of the evidence. *State v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719 (1986). However, when a defendant affirmatively acknowledges at the sentencing hearing that the State's criminal history and

---

[1] Deoxyribonucleic acid

2

offender score calculations are correct, nothing more need be done. The proof

requirement is met. *State v. Bergstrom*, 162 Wn.2d 87, 94, 169 P.3d 816 (2007); *see also*

*State v. Mendoza*, 165 Wn.2d 913, 928-29, 205 P.3d 113 (2009).

Here, Ms. Monroe's attorney stipulated that she had sufficient criminal history to

place her at the high end of the sentencing table. While there was dispute over the exact

number of qualifying prior convictions, defense counsel agreed Ms. Monroe's offender

score was "at least above a nine." 2 VRP (Feb. 19, 2015) at 244. Furthermore, because

the guidelines "end at nine plus," *Id.* at 249, defense counsel agreed that any objections to

the State's offender score calculation would not impact the applicable standard sentencing

range. These concessions were sufficient to satisfy the proof requirements of the

Sentencing Reform Act of 1981, chapter 9.94A RCW.

Even if we were to find Ms. Monroe did not affirmatively acknowledge her

offender score, she fails to show prejudice. Ms. Monroe principally takes issue with the

inclusion of two convictions for conspiracy to possess a controlled substance in her

offender score. Possession of a controlled substance is a class C felony, punishable by up

to five years' imprisonment. RCW 69.50.4013; RCW 9A.20.020. Ms. Monroe bases her

argument on RCW 9A.28.040(3), which provides that a criminal conspiracy is a gross

misdemeanor "when an object of the conspiratorial agreement is a class C felony." But

this provision only applies to offenses *within* the Washington Criminal Code, Title 9A

RCW. If a person is prosecuted for a charge not in Title 9A, such as the prosecution of

Ms. Monroe under the Uniform Controlled Substances Act, chapter 69.50 RCW, then

RCW 9A.28.010 applies. *See State v. Mendoza*, 63 Wn. App. 373, 377, 819 P.2d 387

(1991). RCW 9A.28.010 states

> In any prosecution under this title for . . . conspiracy to commit a felony defined by a statute of this state which is not in this title, . . .
>
> . . . .
>
> (3) If the maximum sentence of imprisonment . . . is less than eight years, such felony shall be treated as a class C felony for purposes of this title.

Under the Uniform Controlled Substances Act, the maximum penalty for a drug

conspiracy is set by the maximum penalty for the offense that is the object of the

conspiracy. RCW 69.50.407. As noted, the maximum penalty for possession of a

controlled substance is five years. The same maximum penalty therefore applies to an

analogous conspiracy conviction. Because this penalty is more than one year but less than

eight, Ms. Monroe's two convictions during 2011 for conspiracy to possess a controlled

substance were properly classified as class C felonies and included in her offender score.

*See* RCW 9.94A.525(2)(c).

4

Even assuming Ms. Monroe's remaining challenges are correct, inclusion of the

two conspiracy convictions would still result in an offender score of 10.[2] This reduced

score does not change the applicable standard range. Thus, Ms. Monroe cannot show

reversible error.

*LFOs*

For the first time on appeal, Ms. Monroe claims the trial court erred in imposing

LFOs because (1) the court did not take her mental health conditions into account when

imposing LFOs, (2) the court did not inquire into her ability to pay, and (3) mandatory

LFOs violate substantive due process and equal protection. The trial court imposed two

mandatory LFOs on Ms. Monroe: a $500 victim assessment and a $100 DNA collection

fee. Appellate courts review a decision on whether to impose LFOs for abuse of

discretion. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991).

### *Consideration of Mental Health*

Under RCW 9.94A.777, a court must consider a defendant's ability to pay prior to

imposing most LFOs if the defendant suffers from a "mental health condition." The

statute provides a specific definition of "mental health condition":

---

[2] Five priors that the defense concedes, plus the two conspiracies, plus two current
offenses and one community custody point.

> [A] defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, *as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.*

RCW 9.94A.777(2) (emphasis added).

While Ms. Monroe presented evidence of mental health issues at sentencing, she did not do so in a manner triggering application of RCW 9.94A.777. Ms. Monroe informed the court she was on medications for numerous mental health conditions, but she did not prove—in a manner required by the statute—she had been diagnosed with a mental disorder preventing her from gainful employment. The trial court did not err when it did not consider Ms. Monroe's mental health in assessing mandatory LFOs.

*Application of Blazina[3] to Mandatory LFOs*

Ms. Monroe next argues her LFOs should be stricken because the trial court did not perform the individualized inquiry required by RCW 10.01.160(3). Because the LFOs imposed in this case were all mandatory rather than discretionary, her claim fails. Mandatory LFOs must be imposed regardless of the defendant's ability to pay. *State v. Stoddard*, 192 Wn. App. 222, 225, 366 P.3d 474 (2016); *State v. Mathers*, 193 Wn. App.

---

[3] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

6

No. 33213-6-III
*State v. Monroe*

913, ___ P.3d ___ (2016).

*Constitutionality of Mandatory LFOs*

In addition to her general objection to the imposition of LFOs, Ms. Monroe

appears to argue that imposition of LFOs without an assessment of ability to pay violates

her substantive due process rights and equal protection. These constitutional arguments

fail for the reasons set forth in *Mathers*.

Based on the foregoing, Ms. Monroe's sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.